# COMMON PLEAS OF PHILADELPHIA.

### WHALLEY vs. PODDINGTON.

### RICORD vs. WHITESIDES.

*Boarding House Keeper's Act. Printed schedules of rates need not be posted when a special contract has been made. Guest may waive the benefit of the Act.*

1. The object of the Act of 20th of April, 1876, entitled, "An act to prevent fraud and fraudulent practices upon or by hotel keepers, inn keepers and boarding house keepers," is to protect those who rely on the good faith of their entertainers and have taken no means to protect themselves; but it has no application to cases where the boarder, before occupying the room, has made a special contract of his own.

2. Where a party makes his own contract, enters into possession under its terms, makes payments under its provisions, and makes no complaints as to the absence of the placards required by law, he thereby waives the benefit of the law, and is estopped from setting it up in defence of payment.

Opinion by BIDDLE, J., March 29th, 1879.

"These two cases, although not incidental, are so simi-lar that the point of law raised in both of them can be considered without adverting to the difference between them. They were both actions of replevin for goods and baggage which had been detained by certain boarding-house keepers for non-payment of board.

"It appeared in both cases that the boarders, before oc-cupying the rooms, had made a special contract stipulating the time for which they would require the rooms and the amount they were to pay for them; that they subsequently went away, leaving a certain amount of board unpaid, for which their goods were detained. There was no defence against the payment of the board, on the ground that it had been paid, or that it was not due, but it was contend-ed that it could not be recovered because the keeper of the boarding-house had not complied with the provisions in the second clause of an act entitled: 'An act to pre-vent fraud and fraudulent practices upon or by hotel keepers, inn keepers and boarding-house keepers,' passed on the 20th of April, 1876, and that this law, ostensibly

enacted for the purpose of preventing fraud, could be successfully invoked for its protection.

The section referred to is as follows: "Every keeper of a hotel, restaurant, inn, or boarding-house shall put in a conspicuous place in the office or public room, and in every bedroom occupied by guests in said house, a printed copy of this act, and a statement of the charges or rates of charges by the day, and for meals and items furnished, and for lodging. No charge or sum shall be collected or received by any such person, for any services not actually rendered or for any items not actually delivered; or for a longer time than the person so charged actually remained at such place. For any violation of this section the offender shall forfeit his bill so charged, and upon conviction thereof be adjudged guilty of a misdemeanor, and shall be punished by imprisonment in the county jail for not more than six months." This section, it was admitted, in the present case had not been complied with.

Before the passage of this act a person who took lodging with an inn or boarding-house without any stipulation as to the amount that he was to be charged, was liable to have a claim made against him for much more than the services rendered him were worth, and he was subjected to this disadvantage, that whereas in an ordinary case of excessive demand, he might refuse payment and require the claimant to prove the value of the services rendered, yet in the case of a proprietor of a hotel, inn or boarding house, on his refusal to pay what was demanded, his goods and baggage would be seized, detained, and subsequently sold under the provisions of the act of May 7, 1855. This proceeding against a traveller resulted usually in the payment of whatever was demanded, no mat-how excessive the charge might be. The delay, detention and expense involved in testing the landlord's rights in the matter, few persons would willingly incur. It was to prevent this extortion that our Legislature, in 1876, when a large number of visitors was expected to arrive in our city, were induced to pass this act.

On the trial of one of the cases it was therefore held that the plain object of the enactment was to protect those who, relying on the good faith of their entertainers, had taken no means to protect themselves. It was to bring to the knowledge of those taking board at the usual rates "of charges by the day, and for meals and items furnished, and for lodging." so that, if dissatisfied with them, they could go elsewhere; but that it had no application to cases where the boarder, before occupying the rooms, had made a special contract of his own. In such cases a placard, giving the rates charged by the day or the rates which would be charged if transcient boarders were ever taken, would be of no value, as neither the landlord nor boarder would be bound by them. The landlord might well assume that placards of this character in rooms which he had rented for specific terms and at prices mutually satisfactory might be removed without the forfeiture of all his claims for board. We think that this is the correct interpretation of the law; but even if it were not, the right to recover board in these cases might be sustained on another, though narrower ground. It is a well-settled principle of law that a party may waive the provisions of a statute made for his benefit. The most familiar instance of this is the case of the "exemption law," where a person can waive the provisions of a law made not only for his protection, but for the benefit of his family. In the present case, therefore, it could well be held that, where a party makes his own contract, enters into possession under its terms, makes payments under its provisions, and makes no complaints as to the absence of the placard required by the law, that he has waived the useless formality of its being posted in his chambers, and that he is estopped, when the services have been rendered, the rooms have been occupied, and the meals furnished, from setting it up in defence of payment.

On either of these grounds, we think the landlord has not forfeited his bill, and we, therefore, in Whalley vs. Poddington dismiss the motion for a new trial, and in Ricords vs. Whitesides give judgment on the point reserved.

## NOTES OF RECENT DECISIONS IN SUPREME COURT PA.

H.. a seaman on one of defendant's steamers, was injured while on duty as night watchman in the port of New Orleans. Neither the master nor the seamen have anything to do with the loading and unloading of the steamers at that port, which, by special contract, is under the exclusive charge of a general stevedore, who employs his own men, uses his own machinery and cargo planks. On the night of the accident these planks were left without proper support by the fall of the river, and the plaintiff, who had gone forward to learn what was the cause of a noise he had heard, stepped upon one of them, which tilted and threw him overboard.

*Held* (affirming the judgment of the court below), that the questions whether the stevedore was an agent of the defendant or an independent contractor, or whether the plaintiff was a fellow servant in a common employment, were properly submitted to the jury.

Mullan vs. Steamship Co., 28 Sm. 25, 1 Weekly Notes, 214, followed—*Hass vs. Phila. & S. M. S. Co.*

Where judgment has been obtained on a mortgage after service on the mortgagor, and the mortgagor subsequently dies. it is not necessary to issue a writ of *scire facias* to warn his personal representatives before proceeding to execution.

Taylor vs. Young (21 Sm. 81) followed.—*Hunsecker et al vs. Thomas et al.*

Where the plaintiff claims title to negotiable paper through an indorsement not in the usual form, he must establish his title by evidence before he will be entitled to judgment.

A note, drawn to the order of Susanna P. Prahl, was indorsed "Mrs. Prahl."

*Held*, that the indorsement was irregular, and that the plaintiff was not entitled to judgment for want of an affidavit of defence.—*Prahl vs. Smaltz.*